# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>DOUGLAS DEAN JOHNSON,<br><br>    Defendant. | No. CR08-4006-MWB<br><br>**REPORT AND RECOMMENDATION ON MOTIONS TO SUPPRESS** |

      This matter is before the court on two motions to suppress filed by the defendant Douglas Dean Johnson. In one motion, Doc. No. 71, Johnson seeks to suppress evidence seized from a Primghar, Iowa, residence during execution of a search warrant issued on May 8, 2007. In a separate motion, Doc. No. 70, he seeks to suppress evidence seized during a search of his property, outbuildings, and curtilage in Clay County, Iowa, during execution of a search warrant issued on July 11, 2008. Johnson argues neither of the search warrant applications established probable cause to issue the warrant. The plaintiff (the "Government") has resisted both motions. Doc. Nos. 82 & 81, respectively. Pursuant to the Trial Management Order, Doc. No. 16, motions to suppress were assigned to the undersigned United States Magistrate Judge for review, the holding of any evidentiary hearing, and the filing of a report and recommended disposition of the motions. The court held a hearing on the motions on March 27, 2008, at which Assistant United States Attorney Kevin Fletcher appeared on behalf of the Government, and Johnson appeared in person with his attorney, Al Willett.

      Both parties agree that because the magistrates who issued the warrants relied solely on the affidavits in support of the two search warrants, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir.

1999) (internal quotation marks, citations omitted). Therefore, no testimony was offered at the hearing, and the court heard oral argument on the motions. At the parties' request, the court will consider the exhibits attached to Johnson's motions to be true and correct copies of the two warrants, warrant applications, affidavits, and supporting documents. *See* Doc. Nos. 70-3 & 71-3. The court will discuss the law applicable to review of a search warrant application, and then will address the challenged search warrants in chronological order.

## *Applicable Law*

The United States Supreme Court has set the standard for review of a search warrant application, as follows:

> [W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." *Spinelli [v. United States,]* 309 U.S. [410,] 419, 89 S. Ct. [1509,] 590[, 21 L. Ed. 2d 637 (1969)]. "A grudging or negative attitude by reviewing courts toward warrants," *[United States v.] Ventresca*, 380 U.S. [102,] 108, 85 S. Ct. [741,] 745, [13 L. Ed. 2d 684 (1965)], is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant [and] "courts should not invalidate . . . warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner." *Id.*, [380 U.S.] at 109, 85 S. Ct. at 746.
>
> . . . . Reflecting this preference for the warrant process, the traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a "substantial basis for . . . conclud[ing]" that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more. *Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 736, 4 L. Ed. 2d 697 (1960). *See United States v. Harris*, 403 U.S.

573, 577-583, 91 S. Ct. 2075, 2079-2082, 29 L. Ed. 2d 723 (1971). [FN10]

> [FN10] We also have said that "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants," *Ventresca*, *supra*, 380 U.S. at 109, 85 S. Ct. at 746. This reflects both a desire to encourage use of the warrant process by police officers and a recognition that once a warrant has been obtained, intrusion upon interests protected by the Fourth Amendment is less severe than otherwise may be the case.

*Illinois v. Gates*, 462 U.S. 213, 236-37 & n.10, 103 S. Ct. 2317, 2331 & n.10, 76 L. Ed. 2d 527 (1983).

Thus, the scope of this court's review of the search warrant in this case is limited to a determination of whether the magistrate had a "substantial basis" to conclude a search would uncover evidence of wrongdoing. In conducting this review, the court is mindful that

> affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law have no proper place in this area." *Ventresca, supra*, 380 U.S. at 108, 85 S. Ct. at 745. . . . [M]any warrants are – quite properly . . . issued on the basis of nontechnical, common-sense judgment of laymen applying a standard less demanding than those used in more formal legal proceedings.

*Gates*, 462 U.S. at 235-36, 103 S. Ct. at 2331. As the Supreme Court further explained:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying

3

> hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed. *Jones v. United States,* 362 U.S. [257,] 271, 80 S. Ct. [725,] 736[, 4 L. Ed. 2d 697 (1960)]. We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does [the prior legal standard].

*Gates*, 462 U.S. at 238-39, 103 S. Ct. at 2332. *Accord United States v. Lucca*, 377 F.3d 927, 933 (8th Cir. 2004) (noting the reviewing court must pay "great deference" to the issuing magistrate's probable cause determinations, citing *Gates*).

Notably, even if, in hindsight, the information in the affidavit is deemed insufficient to support a finding of probable cause to issue the warrant, the evidence will not be suppressed if the officers acted in reasonable, good faith reliance on a search warrant issued by a neutral and detached magistrate. *United States v. Leon*, 468 U.S. 897, 922-23, 104 S. Ct. 3405, 3420, 82 L. Ed. 2d 677 (1984); *accord Lucca*, 377 F.3d at 933. "Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, . . . and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." *Id.*, 468 U.S. at 922-23, 104 S. Ct. at 3420 (citations and footnote omitted). As the United States Supreme Court noted in *Leon*:

> It is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination. Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a "bare bones" affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search. [Citations omitted.]

*Id.*, 468 U.S. at 923 n.24, 104 S. Ct. at 3420 n.24.

Thus, if serious deficiencies exist either in the warrant application itself (*e.g.*, where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," *id.*, 468 U.S. at 923, 104 S. Ct. at 3421 (citing *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978)), or in the magistrate's probable cause determination, then the *Leon* good faith exception may not apply. As the *Leon* Court explained:

> Deference to the magistrate, however, is not boundless. It is clear, first, that the deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based. Second, the courts must also insist that the magistrate purport to "perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police." A magistrate failing to "manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application" and who acts instead as "an adjunct law enforcement officer" cannot provide valid authorization for an otherwise unconstitutional search.
>
> Third, reviewing courts will not defer to a warrant based on an affidavit that does not "provide the magistrate with a substantial basis for determining the existence of probable cause." "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." Even if the warrant application was supported by more than a "bare bones" affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances, or because the form of the warrant was improper in some respect.

*Leon*, 468 U.S. at 914-15, 104 S. Ct. at 3416 (internal citations omitted). The Court noted that good faith on law enforcement's part in executing a warrant "is not enough," because "[i]f subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police." *Leon*, 468 U.S. at 915 n.13, 104 S. Ct. at 3417 n.13 (citing *Beck v. Ohio*, 379 U.S. 89, 97, 85 S. Ct. 223, 228, 13 L. Ed. 2d 142 (1964), and *Henry v. United States*, 361 U.S. 98, 102, 80 S. Ct. 168, 171, 4 L. Ed. 23 134 (1959)).

Even if a magistrate improperly analyzes the totality of the circumstances in finding probable cause, under *Leon*, the exclusionary rule should not be applied to exclude evidence as a means of punishing or deterring an errant or negligent magistrate. The Supreme Court found that penalizing officers who act in good faith on a warrant for a magistrate's error in issuing the warrant "cannot logically contribute to the deterrence of Fourth Amendment violations." *Leon*, 468 U.S. at 921, 104 S. Ct. at 3419. The relevant question is whether law enforcement actions were objectively reasonable; *i.e.*, whether "the offending officers acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *Leon*, 468 U.S. at 918, 104 S. Ct. at 3418. The *Leon* Court noted:

> As we observed in *Michigan v. Tucker*, 417 U.S. 433, 447, 94 S. Ct. 2357, 2365, 41 L. Ed. 2d 182 (1974), and reiterated in *United States v. Peltier*, 422 U.S. at 539, 95 S. Ct. at 2318:
>
>> "The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future

6

> counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force."
>
> The *Peltier* Court continued, *id.* at 542, 95 S. Ct. at 2320:
>> "If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment."

*Leon*, 468 U.S. at 919, 104 S. Ct. at 3418-19.

### *O'Brien County Search Warrant*

On May 8, 2007, Lt. Randall Kramer, an O'Brien County Sheriff's Deputy, prepared an Application for Search Warrant to search the following person and property:

> Douglas Dean Johnson
>
> 375 3rd Street N.W. Primghar, O'Brien County, Iowa; Described as brown 1 1/2 story single family dwelling with an attached 2 stall garage (see attached O'Brien County Assessor's sheet and photos)
>
> 1991 Chev blue/silver pickup bearing Iowa license [number]
> 1984 Chev Cavalier brown-bearing Iowa license [number]
> 2000 Ford Taurus blue-bearing Iowa license [number]

Doc. No. 71-3 at 5. Lt. Kramer stated the above person and property contained "certain property, namely: Pseudoephedrine pills, lithium batteries, ether, sulfuric acid, muriatic acid, plastic tubing, glass ware, coffee filters, packaging materials, blender, aluminum foil, methamphetamines, drug paraphernalia, ledgers, scales, monies, [and] drug notes," all of which he indicated was "[p]roperty that has been obtained in violation of law"; "[p]roperty, the possession of which is illegal"; "[p]roperty used or possessed with intent

7

to be used as the means of committing a public offense or concealed to prevent an offense from being discovered"; and "[p]roperty relevant and material as evidence in a criminal prosecution." *Id.* at 5-6.

In support of the search warrant application, Lt. Kramer submitted an Affidavit in which he stated, "Doug Johnson has made the following purchases of products containing pseudoephedrine on the dates listed," listing nine transactions between April 11 and April 26, 2007, at several pharmacies in Minnesota, and one pharmacy in Iowa. *Id.* at 10. He stated the nine pseudoephedrine purchases by "Doug Johnson in a 30 day period" totaled "20.4 grams of pseudoephedrine." *Id.* He cited "Iowa Code § 126.23A(2)a," which he stated prohibits a person from purchasing more than 7500 milligrams, or 7.5 grams, of pseudoephedrine in any 30-day period. He further stated the following:

> Based on this investigator[']s training and experience it is known that persons that are involved with manufacturing methamphetamine will travel to several stores to obtain the pseudoephedrine pills, lithium batteries and other items that are needed to manufacture the methamphetamines. It is also known by this investigator based on his training and experience that persons involved in the gathering of the materials used in the manufacturing of methamphetamines, will store (hide) these items at their residence and/or in their vehicles. That persons involved with the gathering and/or manufacturing of methamphetamines will also be involved in the sale and/or use of illegal drugs and that they will store (hide) items such as pipes, scales, ledgers, illegal drugs, monies, and other drug paraphernalia at their residence and/or in their vehicles.

*Id.*

Lt. Kramer attached a printout from the O'Brien County Assessor's Office showing that the real property located at 375 3rd Street, N.W. in Primghar, Iowa, was owned by a Denise D. Moore f/k/a Denise D. Philiph, and listing certain information about the residence on the property (dimensions, number of bedrooms and bathrooms, finish,

8

plumbing, appliances, etc.). He also attached an unlabeled photograph of a house, presumably the house in question. *Id.* at 7-9.

No other information was provided in support of the search warrant application. The magistrate who reviewed the application indicated he had "relied on [the] written Application for Search Warrant of Randall Kramer, Attachment A [the Affidavit] and attached Asses[s]or record and photo." *Id.* at 11. Under "Abstract of Testimony," the magistrate wrote "None," indicating no further information was received beyond that set forth in the application. *Id.*

In the application for the search warrant and the supporting documents, Lt. Kramer made no connection whatsoever between Johnson and the property to be searched, nor did he inform the court how he determined that the defendant Douglas Dean Johnson was the same "Doug Johnson" who purchased the pseudoephedrine. The officer provided no information to indicate Johnson's connection to the residence sought to be searched; his relationship, if any, to or with the property owner Ms. Moore; who owned the vehicles listed in the warrant application and what their connection was to the residence or to Johnson; or what information led the officer to believe evidence of criminal activity might be found at the residence, in the vehicles, or on Johnson's person. Regarding the list of pseudoephedrine purchases, the officer stated he had "conducted an investigation and received information from fellow officers and other sources" indicating "Doug Johnson" had made the listed pseudoephedrine purchases. *See* Doc. No. 71-3 at 10. He failed to cite the source of his information sufficiently for the court to determine if the source was reliable.

On its face, the warrant application failed to support a probable cause determination. The application failed to provide a substantial basis for anyone to "make a practical, common-sense decision" that contraband or evidence of a crime likely would be found on

Johnson's person, in the listed vehicles, or at the residence. Notably, the Government basically conceded this point at the hearing.

Apparently, Ms. Moore is Johnson's fiancée, and Johnson was living at the Primghar residence. However, even though these facts may have been known to Lt. Kramer, they were not included in the warrant application. Considering only the information found within the four corners of the warrant application, the application and supporting documents failed to support the magistrate's probable cause determination. *See Gates, supra; Lucca, supra; Etheridge, supra*. Further, the court finds the warrant application was so facially deficient that the magistrate's issuance of the warrant was "a rubber stamp for the police," merely ratifying the bare bones conclusions of Lt. Kramer. *See Leon*, 468 U.S. at 91-15, 104. S. Ct. at 3416. Thus, the exclusionary rule should be applied and the evidence seized during execution of the O'Brien County warrant should be excluded.

The seized evidence included two items. First, the officers seized two pages of phone numbers. The Government indicated at the hearing that those two pages of phone numbers cannot be located, and the Government will not offer those pages into evidence at the trial. Johnson's motion should be granted as to the two pages of phone numbers. Second, the officers seized a receipt from a Walgreen's in Worthington, Minnesota, showing the purchase of pseudoephedrine on April 26, 2007. The same purchase of the drug is listed in the warrant application, *see* Doc. No. 71-3 at 10, and the Government obtained a copy of the receipt from Walgreen's, independently of the discovery of the identical receipt during execution of the search warrant. Thus, it appears the copy of the receipt obtained from Walgreen's would be admissible at trial. However, because the search warrant is invalid, the Government should be precluded from offering evidence that the receipt was found at the Primghar residence.

*Clay County Search Warrant*

On July 11, 2007, Clay County Sheriff's Deputy Casey Timmer prepared an Application for Search Warrant to search "a Morton-type building on the property of Doug Johnson located at 2970 290th Street, Dickens, Clay County, Iowa, other outbuildings on the property, [and] the curtilage of said property," for "pseudoephedrine, methamphetamine, ledger books, books of account, scales, seal a meal machines, baggies or other packaging materials, paraphernalia used for the consumption and packaging of drugs or to contain the same, money, and remnants of methamphetamine lab[.]" Doc. No. 70-3 at 2. In support of the warrant application, Deputy Timmer prepared an affidavit in which he detailed pseudoephedrine purchases by "Doug Johnson" between June 18 and 26, 2007, totaling 10,320 mg., in excess of the legal limit of 7500 mg. in a thirty-day period under Iowa law. *See id.* at 3-4.

In his affidavit, Deputy Timmer also provided the following information:

> The [pharmacy] logs show a Primghar address for Johnson. The undersigned is aware that Johnson also owns a property located at 2970 290th Street, Dickens, Clay County, Iowa. On this date [i.e. July 11, 2007], the undersigned went to that property with O'Brien County Lt. Randy Kramer. While at the residence, the undersigned spoke with the tenants of the property, Randy and Kim Berger. Tenants advised that they do not have access to a certain Morton-type building on the property, but that Johnson does frequent that building at least weekly. The undersigned could see that the windows of the building are covered with a combination of wood, cardboard, and styrofoam. Tenants also showed the undersigned a burn barrel on the premises. In plain view toward the top of the pile in the burn barrel were a number of ripped lithium batteries, consistent with having been used in the methamphetamine manufacturing process, along with what appears to be empty pseudoephedrine blister packs. There are a number of other outbuildings on the premises where illegal items could be stored.

> Based on training and experience, I know that persons manufacturing methamphetamine can and do use other people to purchase pseudoephedrine for them. Pseudoephedrine is a key ingredient in the manufacture of methamphetamine. People buying pseudoephedrine for meth manufacturers often receive meth in exchange for these purchases. These persons also will shop different stores on the same date in an attempt to avoid detection by law enforcement. As users of meth, they often maintain drugs, paraphernalia, notes, and cash for the purchases of pseudoephedrine in their homes or other buildings. They also use their vehicles for transportation to make the purchases and to store the contraband.
>
> Johnson shopped for pseudoephedrine in different stores on the same date. He also violated Iowa Code § 124.213 by purchasing more than 7500 mg pseudoephedrine in a 30 day period. These are indications that the pseudoephedrine was purchased for use in the manufacture of meth.
>
> A review of Johnson's criminal history shows drug related convictions.

Doc. No. 70-3 at 4-5.

In the magistrate's Endorsement on the search warrant application, she indicated she relied on Deputy Timer's affidavit and also on sworn testimony taken from the deputy. As the abstract of the officer's testimony, the magistrate incorporated the deputy's Affidavit. Doc. No. 70-3 at 6. The magistrate found the information presented justified probable cause, and she issued the search warrant. *Id.*

Johnson argues his "mere purchases of pseudoephedrine" are insufficient, standing alone, to support the magistrate's probable cause determination for issuance of the warrant. He argues further that the information provided by the tenants of Johnson's Clay County property was "insufficient and stale as it pertains to the granting of a search warrant." Doc. No. 70-2 at 2. Johnson claims that although the tenants told the officer that Johnson visited the property "at least weekly," there was no information about the last time Johnson was present at the property. The tenants stated they did not have access to the

Morton-type building, but Johnson did have access to the structure. However, there is no information about who else may have had access to the building. They showed the officer the burn barrel containing items of interest to his investigation, but they offered no information about when the burn barrel was used last, or by whom. Johnson argues that overall, the information contained in the warrant application was insufficient to show a reasonable probability that evidence of a crime would be found in the place sought to be searched. *Id.* at 2-4, citing *United States v. Turner*, 431 F.3d 332, 336 (8th Cir. 2006) (citing *Gates*); *United States v. Gettle*, 474 F.3d 1081, 1086 (8th Cir. 2007) (discussing factors in determining staleness, holding "[p]robable cause must exist at the time the search warrant is issued.").

The Government argues the warrant application contained sufficient information to support the magistrate's probable cause determination, pointing to six items of evidence that, when taken together, supported the officer's good faith belief that evidence of a crime could be found at the property:

(1) The five purchases of pseudoephedrine from June 18, 2007, through June 26, 2007, show defendant, in a thirty day period purchased 10,320 milligrams of pseudoephedrine;

(2) The purchases of pseudoephedrine exceeded 7,500 milligrams of pseudoephedrine Doug Johnson could purchase in a 30 day period under Iowa Code Section 126.213A;

(3) The pseudoephedrine logs from the local pharmacies show defendant's address in Primghar, Iowa, but Inv. Timmer was personally aware defendant also owns a property located at 2970 290th Street, Dickens, Clay County, Iowa;

(4) Inv. Timmer and Lt. Randy Kramer of the O'Brien County Sheriff's Office, on July 11, 2007, went to defendant's property at 2970 290th Street in Dickens, Iowa. Inv. Timmer spoke with the tenants of the property, Randy and Kim Berger. The tenants advised they do not have access to a certain Morton-type building on the property, but that defendant does frequent that building at least weekly. Inv. Timmer saw the

        windows of the outbuilding are covered with a combination of wood, cardboard, and styrofoam. The tenants also showed Inv. Timmer a burn barrel on the premises, where in plain view, on top of the pile in the burn barrel were a number of ripped lithium batteries and empty pseudoephedrine blister packs. These items, the ripped lithium batteries and empty pseudoephedrine blister packs, are consistent with having been used in the methamphetamine manufacturing process;

(5)    Inv. Timmer is a 7 1/2 year law enforcement officer with 1 year of investigative experience. [*See* Doc. No. 70-3 at 3.) The training and experience of Inv. Timmer shows that persons manufacturing methamphetamine can and do use other people to purchase pseudoephedrine for them. Pseudoephedrine is a key ingredient in the manufacture of methamphetamine. People buying pseudoephedrine for meth manufactures often receive meth in exchange for these purchases. These persons also will shop different stores on the same date in an attempt to avoid detection by law enforcement. As users of meth, they often maintain drugs, paraphernalia, notes, and cash for the purchases of pseudoephedrine in their homes or other buildings. They also use their vehicles for transportation to make the purchases and to store the contraband. The purchases of pseudoephedrine in violation of Iowa law indicates the pseudoephedrine was purchase[d] for use in the manufacture of meth; and,

(6)    Inv. Timmer also performed a review of defendant's criminal history which showed drug related convictions.

Doc. No. 81-2 at 5-7.

      The court finds the totality of the information presented to the magistrate would support "a practical, common-sense decision . . . that contraband or evidence of a crime [would] be found" on Johnson's property. *Gates*, 462 U.S. at 238-39, 103 S. Ct. at 2332. Giving the magistrate's probable cause determination the "great deference" it deserves, the court further finds the magistrate had a substantial basis for concluding a search of the property would uncover evidence of wrongdoing. *Id.*; *see Lucca*, 377 F.3d at 933.

Johnson's staleness argument is without merit under these facts. In order to justify a search warrant for the property, it is irrelevant whether others besides Johnson also had access to the Morton-type building or to the burn barrel. The officers saw, in plain view, evidence that precursors for the manufacture of methamphetamine had been burned in the burn barrel on property owned by Johnson. The property's tenants stated Johnson frequented the property at least weekly. The officers had pharmacy logs showing Johnson had purchased in excess of the legal limit of pseudoephedrine. And they had evidence that Johnson had prior drug-related convictions. While Johnson's argument about who had access to the property and when may be useful in defending the case, it does not defeat the fact that the magistrate had ample information before her to support probable cause to search Johnson's property.

Further, even if the warrant application was lacking, the court finds that in the case of the Clay County warrant, the officers reasonably and in good faith relied on the warrant issued by the magistrate. Their belief that their conduct did not violate the Fourth Amendment was objectively reasonable, and the evidence seized in the search should not be suppressed. *See Leon, supra*.

Therefore, for the reasons discussed above, IT IS RESPECTFULLY RECOMMENDED that Johnson's motion (Doc. No. 71) to suppress the evidence seized in the search of the Primghar residence be **granted**, and his motion (Doc. No. 70) to suppress the evidence seized in the search of the Clay County property be **denied**.

Any party planning to file objections to this Report and Recommendation must order a transcript of the suppression hearing **by April 4, 2008**, <u>regardless of whether the party believes a transcript is necessary to argue the objection</u>. If an attorney files an objection to this Report and Recommendation without having ordered the transcript as required by this order, the court may impose sanctions on the attorney.

Objections to this Report and Recommendation must be filed by **April 8, 2008**. Responses to objections must be filed by **April 15, 2008**.

**IT IS SO ORDERED.**

**DATED** this 1st day of April, 2008.

_____
PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT