**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

DOUGLAS DEAN JOHNSON,

        Defendant.

No. CR08-4006-MWB

**ORDER CONCERNING
MAGISTRATE'S REPORT AND
RECOMMENDATION REGARDING
DEFENDANT'S MOTIONS TO
SUPPRESS**

———————————

**TABLE OF CONTENTS**

*I.  INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A.  Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B.  Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*II.  LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   *A.  Standard Of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   *B.  The Primghar Residence Search Warrant* . . . . . . . . . . . . . . . . . . . 14
   *C.  The Clay County Property Search Warrant* . . . . . . . . . . . . . . . . . . 14
       *1.  Probable cause to search the Clay County property* . . . . . . 14
       *2.  Staleness of the information in the application* . . . . . . . . 19
       *3.  Leon good faith* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*III.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# I. INTRODUCTION AND BACKGROUND

## A. Procedural Background

On January 24, 2008, an indictment was returned against defendant Douglas Dean Johnson charging him with conspiracy to manufacture and distribute 50 grams or more of pure methamphetamine, to distribute pseudoephedrine knowing that it would be used in the manufacture of methamphetamine and to possess pseudoephedrine, after having previously being convicted of a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(c)(1), 841(c)(2), 846, and 851, and interstate travel in aid of racketeering, in violation of 18 U.S.C. § 1952(a)(3). Defendant Johnson has filed two motions to suppress (Dkt. #70 & #71). In one motion to suppress, defendant Johnson seeks to suppress evidence seized from a Primghar, Iowa, residence during the execution of a search warrant issued on May 8, 2007, while in the other he seeks to suppress evidence seized during a search of his property, outbuildings, and curtilage in Clay County, Iowa, during the execution of a search warrant issued on July 11, 2007.

Defendant Johnson's motion to suppress was referred to Chief United States Magistrate Judge Paul A. Zoss, pursuant to 28 U.S.C. § 636(b). Judge Zoss conducted a hearing on defendant Johnson's motions and then filed a Report and Recommendation in which he concluded that the search warrant application for the Primghar residence failed to support the state magistrate's probable cause determination. Moreover, Judge Zoss found that the search warrant application was so facially deficient that the state magistrate's issuance of a search warrant constituted "a rubber stamp for the police." Judge Zoss, thus, concluded that the exclusionary rule should be applied and the evidence seized during the execution of the search warrant for the Primghar residence should be excluded. With respect to the search warrant for the Clay County property, Judge Zoss found that the totality of the information presented to the state magistrate supported the state magistrate's

probable cause determination. Judge Zoss further found that the information contained in the search warrant application was not stale. Finally. Judge Zoss concluded that it was not objectively unreasonable for the law enforcement officers here to proceed to execute the search warrant for the Clay County property in these circumstances. Therefore, Judge Zoss recommended defendant Johnson's motion to suppress the evidence seized in the search of the Primghar residence be granted while defendant Johnson's motion to suppress the evidence seized in the search of the Clay County property be denied. Defendant Johnson has filed objections to Judge Zoss's Report and Recommendation, but only with respect to his motion to suppress evidence seized during a search of his property in Clay County, Iowa. Neither party has filed objections concerning defendant Johnson's motion to suppress evidence seized from the Primghar residence. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Johnson's motions to suppress.

## B. Factual Background

In his Report and Recommendation, Judge Zoss made the following findings of fact:

> On May 8, 2007, Lt. Randall Kramer, an O'Brien County Sheriff's Deputy, prepared an Application for Search Warrant to search the following person and property: Douglas Dean Johnson
>
> > 375 3rd Street N.W. Primghar, O'Brien County, Iowa; Described as brown 1 1/2 story single family dwelling with an attached 2 stall garage (see attached O'Brien County Assessor's sheet and photos)
> >
> > 1991 Chev blue/silver pickup bearing Iowa license [number]
> > 1984 Chev Cavalier brown-bearing Iowa license [number]

2000 Ford Taurus blue-bearing Iowa license [number]

Doc. No. 71-3 at 5. Lt. Kramer stated the above person and property contained "certain property, namely: Pseudoephedrine pills, lithium batteries, ether, sulfuric acid, muriatic acid, plastic tubing, glass ware, coffee filters, packaging materials, blender, aluminum foil, methamphetamines, drug paraphernalia, ledgers, scales, monies, [and] drug notes," all of which he indicated was "[p]roperty that has been obtained in violation of law"; "[p]roperty, the possession of which is illegal"; "[p]roperty used or possessed with intent to be used as the means of committing a public offense or concealed to prevent an offense from being discovered"; and "[p]roperty relevant and material as evidence in a criminal prosecution." *Id.* at 5-6.

In support of the search warrant application, Lt. Kramer submitted an Affidavit in which he stated, "Doug Johnson has made the following purchases of products containing pseudoephedrine on the dates listed," listing nine transactions between April 11 and April 26, 2007, at several pharmacies in Minnesota, and one pharmacy in Iowa. *Id.* at 10. He stated the nine pseudoephedrine purchases by "Doug Johnson in a 30 day period" totaled "20.4 grams of pseudoephedrine." *Id.* He cited "Iowa Code § 126.23A(2)a," which he stated prohibits a person from purchasing more than 7500 milligrams, or 7.5 grams, of pseudoephedrine in any 30-day period. He further stated the following:

> Based on this investigator[']s training and experience it is known that persons that are involved with manufacturing methamphetamine will travel to several stores to obtain the pseudoephedrine pills, lithium batteries and other items that are needed to manufacture the methamphetamines. It is also known by this investigator based on his training and experience

that persons involved in the gathering of the materials used in the manufacturing of methamphetamines, will store (hide) these items at their residence and/or in their vehicles. That persons involved with the gathering and/or manufacturing of methamphetamines will also be involved in the sale and/or use of illegal drugs and that they will store (hide) items such as pipes, scales, ledgers, illegal drugs, monies, and other drug paraphernalia at their residence and/or in their vehicles.

*Id.*

Lt. Kramer attached a printout from the O'Brien County Assessor's Office showing that the real property located at 375 3rd Street, N.W. in Primghar, Iowa, was owned by a Denise D. Moore f/k/a Denise D. Philiph, and listing certain information about the residence on the property (dimensions, number of bedrooms and bathrooms, finish, plumbing, appliances, etc.). He also attached an unlabeled photograph of a house, presumably the house in question. *Id.* at 7-9.

No other information was provided in support of the search warrant application. The magistrate who reviewed the application indicated he had "relied on [the] written Application for Search Warrant of Randall Kramer, Attachment A [the Affidavit] and attached Asses[s]or record and photo." *Id.* at 11. Under "Abstract of Testimony," the magistrate wrote "None," indicating no further information was received beyond that set forth in the application. *Id.*

In the application for the search warrant and the supporting documents, Lt. Kramer made no connection whatsoever between Johnson and the property to be searched, nor did he inform the court how he determined that the defendant Douglas Dean Johnson was the same "Doug

Johnson" who purchased the pseudoephedrine. The officer provided no information to indicate Johnson's connection to the residence sought to be searched; his relationship, if any, to or with the property owner Ms. Moore; who owned the vehicles listed in the warrant application and what their connection was to the residence or to Johnson; or what information led the officer to believe evidence of criminal activity might be found at the residence, in the vehicles, or on Johnson's person. Regarding the list of pseudoephedrine purchases, the officer stated he had "conducted an investigation and received information from fellow officers and other sources" indicating "Doug Johnson" had made the listed pseudoephedrine purchases. *See* Doc. No. 71-3 at 10. He failed to cite the source of his information sufficiently for the court to determine if the source was reliable.

> . . .

On July 11, 2007, Clay County Sheriff's Deputy Casey Timmer prepared an Application for Search Warrant to search "a Morton-type building on the property of Doug Johnson located at 2970 290th Street, Dickens, Clay County, Iowa, other outbuildings on the property, [and] the curtilage of said property," for "pseudoephedrine, methamphetamine, ledger books, books of account, scales, seal a meal machines, baggies or other packaging materials, paraphernalia used for the consumption and packaging of drugs or to contain the same, money, and remnants of methamphetamine lab[.]" Doc. No. 70-3 at 2. In support of the warrant application, Deputy Timmer prepared an affidavit in which he detailed pseudoephedrine purchases by "Doug Johnson" between June 18 and 26, 2007, totaling 10,320 mg., in excess of the legal limit of 7500 mg. in a thirty-day period under Iowa law. *See id.* at 3-4.

In his affidavit, Deputy Timmer also provided the following information:

The [pharmacy] logs show a Primghar address for Johnson. The undersigned is aware that Johnson also owns a property located at 2970 290th Street, Dickens, Clay County, Iowa. On this date [i.e. July 11, 2007], the undersigned went to that property with O'Brien County Lt. Randy Kramer. While at the residence, the undersigned spoke with the tenants of the property, Randy and Kim Berger. Tenants advised that they do not have access to a certain Morton-type building on the property, but that Johnson does frequent that building at least weekly. The undersigned could see that the windows of the building are covered with a combination of wood, cardboard, and styrofoam. Tenants also showed the undersigned a burn barrel on the premises. In plain view toward the top of the pile in the burn barrel were a number of ripped lithium batteries, consistent with having been used in the methamphetamine manufacturing process, along with what appears to be empty pseudoephedrine blister packs. There are a number of other outbuildings on the premises where illegal items could be stored.

Based on training and experience, I know that persons manufacturing methamphetamine can and do use other people to purchase pseudoephedrine for them. Pseudoephedrine is a key ingredient in the manufacture of methamphetamine. People buying pseudoephedrine for methamphetamine manufacturers often receive methamphetamine in exchange for these purchases. These persons also will shop different stores on the same date in an attempt to avoid detection by law enforcement. As users of methamphetamine,

they often maintain drugs, paraphernalia, notes, and cash for the purchases of pseudoephedrine in their homes or other buildings. They also use their vehicles for transportation to make the purchases and to store the contraband.

Johnson shopped for pseudoephedrine in different stores on the same date. He also violated Iowa Code § 124.213 by purchasing more than 7500 mg pseudoephedrine in a 30 day period. These are indications that the pseudoephedrine was purchased for use in the manufacture of methamphetamine.

A review of Johnson's criminal history shows drug related convictions.

Doc. No. 70-3 at 4-5.

In the magistrate's Endorsement on the search warrant application, she indicated she relied on Deputy Timer's affidavit and also on sworn testimony taken from the deputy. As the abstract of the officer's testimony, the magistrate incorporated the deputy's Affidavit. Doc. No. 70-3 at 6. The magistrate found the information presented justified probable cause, and she issued the search warrant. *Id.*

Report and Recommendation at 7-9, 11-12.

Upon review of the record, the court adopts all of Judge Zoss's factual findings that have not been objected to by defendant Johnson.

## II. LEGAL ANALYSIS

### A. Standard Of Review

The court reviews the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court *may* review de novo any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

De novo review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*,

499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting de novo review is "distinct from any form of deferential review"). The de novo review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while de novo review generally entails review of an entire matter, in the context of § 636 a district court's *required* de novo review is limited to "de novo determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any *issue* need only ask." (emphasis added)). Consequently, the Eighth Circuit Court of Appeals has indicated de novo review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger de novo review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit has been willing to "liberally construe[]" otherwise general pro se objections to require a de novo review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require de

novo review, it is clear to this court that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, this court will strive to provide de novo review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give de novo review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting de novo review with "clearly erroneous standard" of review, and recognizing de novo review was required because objections were filed). The court is unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the

clearly erroneous standard of review is deferential, *see Dixon v. Crete Medical Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than de novo is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads this court to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, the court believes one further caveat is necessary: a district court always remains free to render its own decision under de novo review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and the district court may choose to apply a less deferential standard.[1]

---

[1] The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous

(continued…)

As noted above, defendant Johnson has filed an objection to Judge Zoss's Report and Recommendation. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Johnson's motions to suppress.

---

[1](...continued)
or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. *See United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings, *see Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will *not* result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."'" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed de novo, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g.*, *United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions de novo." (citation omitted)).

### B. The Primghar Residence Search Warrant

No party has filed an objection to Judge Zoss's Report and Recommendation as it pertains to defendant Johnson's motion to suppress evidence seized from the Primghar residence, and it appears to the court upon review of Judge Zoss's findings and conclusions as to that part of Judge Zoss's Report and Recommendation, that there is no ground to reject or modify them. Therefore, the court **accepts** that part of Judge Zoss's Report and Recommendation with respect to defendant Johnson's motion to suppress evidence seized from the Primghar residence, and orders that defendant Johnson's motion to suppress (Dkt. #70) is **granted**.

### C. The Clay County Property Search Warrant

As noted above, defendant Johnson has filed objections to that portion of Judge Zoss's Report and Recommendation concerning defendant Johnson's motion to suppress evidence seized during a search of his property, outbuildings, and curtilage in Clay County. The court will take up each of defendant Johnson's objections to Judge Zoss's Report and Recommendation *seriatim.*

### 1. Probable cause to search the Clay County property

Defendant Johnson initially objects to Judge Zoss's conclusion that the totality of the information presented to the state magistrate supported the state magistrate's probable cause determination. Defendant Johnson contends that the search warrant application for the Clay County property was constitutionally deficient because there was insufficient information to indicate that there was a fair probability that contraband or evidence of a crime would be found in the places identified in the search warrant application.

The seminal case of *Illinois v. Gates*, 462 U.S. 213 (1983), provides the standard an issuing court must follow in determining whether probable cause supports a search

warrant application and, consequently, the duty of the reviewing court when considering the propriety of that determination:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* at 238.

The question presented on review of an issuing judicial officer's determination is not whether the reviewing court would have issued the warrant based on the affidavit as presented, but whether the court which did issue the warrant had a "'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238-239 (citation omitted). Thus, a reviewing court does not conduct a de novo review of the issuing judge's determination, but must instead afford it great deference. *Id.* at 236. As the United States Supreme Court explained in *Gates*:

> [W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." [*Spinelli v. United States*, 393 U.S. 410, 419, 89 S. Ct. 584, 590, 21 L.Ed. 2d 637 (1969) ]. "A grudging or negative attitude toward warrants," [*United States v. Ventresca*, 380 U.S. 102, 108, 85 S. Ct. 741, 745-46, 13 L.Ed. 2d 684 (1965)], is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner." *Id.*, at 109, 85 S. Ct. at 746.

*Gates*, 462 U.S. at 236; *see United States v. Hansel*, ---F.3d---, 2008 WL 1913886, at *2 (8th Cir. May 2, 2008) *(*"Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances, and resolution of the question by an issuing judge 'should be paid great deference by reviewing courts.'") (quoting *United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007)).

The Eighth Circuit Court of Appeals has weighed in on this topic as well, most recently observing that:

> Probable cause to search exists if, under the totality of the circumstances, "'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"

*Hansel*, ---F.3d---, 2008 WL 1913886, at *2 (quoting *United States v. Caswell*, 436 F.3d 894, 897 (8th Cir. 2006) (quoting in turn *Gates*, 462 U.S. at 238)); *see also United States v. Summage*, 481 F.3d 1075, 1077 (8th Cir. 2007) ("Probable cause exists, if under the totality of the circumstances, a showing of facts can be made 'sufficient to create a fair probability that evidence of a crime will be found in the place to be searched.'" ) (quoting *United States v. Underwood*, 364 F.3d 956, 963 (8th Cir. 2004) (quoting in turn *United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir. 2002)); *United States v. Wells*, 223 F.3d 835, 838 (8th Cir. 2000) ("The evidence as a whole must provide a substantial basis for a finding of probable cause to support the issuance of a search warrant."); *United States v. Johnson*, 219 F.3d 790, 790 (8th Cir. 2000) ("Probable cause means a fair probability that contraband or evidence of a crime will be found in a particular place given the circumstances set forth in the affidavit.") (quoting *United States v. Tellez*, 217 F.3d 547 (8th Cir. 2000) (in turn quoting *United States v. Horn*, 187 F.3d 781 (8th Cir. 1999) (internal quotation marks omitted)); *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995) ("Probable cause exists when "there are sufficient facts to justify the belief by a

prudent person that contraband or evidence of a crime will be found in the place to be searched." )(quoting *United States v. Bieri*, 21 F.3d 811, 815 (8th Cir.1994)). Equally on point is the observation of Justice (then Judge) Kennedy:

> For probable cause to exist, a magistrate need not determine that the evidence sought is in fact on the premises to be searched, or that the evidence is more likely than not to be found where the search takes place. The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit.

*United States v. Peacock*, 761 F.2d 1313, 1315 (9th Cir. 1985), *cert. denied*, 474 U.S. 847 (1985) (emphasis added in part) (citations omitted). Where, as here, the issuing state magistrate relied solely on the affidavit presented to her, "'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" *Gladney*, 48 F.3d at 312 (quoting *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982), *cert. denied*, 459 U.S. 1201 (1983)).

Upon review of the record and Judge Zoss's Report and Recommendation, the court concludes that Judge Zoss correctly concluded that there was a substantial basis to support the state magistrate's finding of probable cause to search defendant Johnson's property in Clay County. The court recognizes that the Eighth Circuit Court of Appeals has held that "punctilious paragraph-by-paragraph dissection of the supporting affidavit" is not the appropriate standard of review. *United States v. Townsley*, 843 F.2d 1070, 1076 (8th Cir. 1988); *see United States v. Leisure*, 844 F.3d 1347, 1354 (8th Cir. 1988) (declining to "undertake a piecemeal dismemberment of the various paragraphs of the affidavit without attention to its force as a whole."). Rather, the court acknowledges that a determination of probable cause depends on a reading of the affidavit as a whole. *Gates*, 462 U.S. at 237. Here, viewing the affidavit in a common sense manner, the court cannot say that the issuing

state magistrate did not have a substantial basis to believe that the items sought in the warrant would be found at defendant Johnson's Clay County property. Specifically, the search warrant application contained information detailing the fact that defendant Johnson had made five purchases of pseudoephedrine between June 18, 2007 and June 26, 2007, in which defendant Johnson purchased 10,320 milligrams of pseudoephedrine. This level of pseudoephedrine purchases exceeded the 7,500 milligrams limit on pseudoephedrine defendant Johnson could purchase in a 30 day period under Iowa law. *See* IOWA CODE § 126.213A. On July 11, 2007, the date the search warrant was issued, Inv. Timmer and Lt. Kramer of the O'Brien County Sheriff's Office went to defendant Johnson's Clay County property at 2970 290th Street in Dickens, Iowa. Inv. Timmer spoke with the tenants of the property, Randy and Kim Berger, who advised that while they did not have access to a certain Morton-type building on the property, defendant Johnson did have access to it and frequented that building at least weekly. Furthermore, while the windows of the building were covered, the tenants of the property showed Inv. Timmer a burn barrel on the premises, where in plain view, on top of the pile in the burn barrel, were a number of ripped lithium batteries and empty pseudoephedrine blister packs. These items, the ripped lithium batteries and empty pseudoephedrine blister packs, were consistent with having been used in the methamphetamine manufacturing process. The search warrant application further contained information, drawn from Inv. Timmer's training and experience, that pseudoephedrine is a key ingredient in the manufacture of methamphetamine and that the purchases of pseudoephedrine in violation of Iowa law suggested that the pseudoephedrine was purchased for use in the manufacture of methamphetamine. Finally, the search warrant application contained information that defendant Johnson had a criminal history which included drug related convictions. The court concludes that when all of this information

is considered in the totality, and giving "great deference" to the resolution reached by the state magistrate, *see Hansel*, ---F.3d---, 2008 WL 1913886, at *2; *Grant*, 490 F.3d at 631; *Caswell*, 436 F.3d at 897, the information contained within the search warrant application provides sufficient information to support the state magistrate's probable cause determination here. Therefore, this objection is overruled.

### 2. Staleness of the information in the application

Defendant Johnson also objects to Judge Zoss's conclusion that the information contained in the search warrant application was not stale. Defendant Johnson contends that the information provided by Inv. Timmer was stale and that, as a result, probable cause did not exist at the time the search warrant was issued.

"It is axiomatic that probable cause must exist at the time of the search and not merely at sometime earlier." *United States v. Kennedy*, 427 F.3d 1136, 1141 (8th Cir. 2005); *see United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998); *United States v. Ozar*, 50 F.3d 1440, 1446 (8th Cir. 1995). Therefore, a lapse of time, between the observations of a witness and the issuance of a search warrant "may make probable cause fatally stale." *United States v. Maxim*, 55 F.3d 394, 397 (8th Cir.), *cert. denied*, 516 U.S. 903 (1995). However, the Eighth Circuit Court of Appeals has instructed that: "'We have no 'fixed formula' for deciding when information has become stale, but we consider the nature of the crime being investigated and the property to be searched.'" *United States v. Nieman*, ---F.3d---, 2008 WL 860781, at *3 (8th Cir. Apr. 2, 2008) (quoting *United States v. Stevens*, 439 F.3d 983, 988 (8th Cir. 2006) (citation omitted)); *see Maxim*, 55 F.3d at 397. Thus, the passage of time alone is "not always the controlling factor," since other factors, such as "the nature of the criminal activity involved and the kind of property subject to the search," may also be relevant to the staleness calculus. *Maxim*, 55 F.3d at 397 (citing *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993)).

Moreover, "'where recent information corroborates otherwise stale information, probable cause may be found.'" *Ozar*, 50 F.3d at 1446 (quoting *United States v. Macklin*, 902 F.2d 1320, 1326 (8th Cir. 1990), *cert. denied*, 498 U.S. 1031 (1991)). "The passage of time between the transactions on which a warrant is based and the ensuing search is less significant when the facts recited indicate activity of a continuous nature." *United States v. Jones*, 801 F.2d 304, 314 (8th Cir.1986); *see also United States v. Rugh*, 968 F.2d 750 (8th Cir. 1992). As the Second Circuit Court of Appeals has noted that: "'[N]arcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness.'" *United States v. Rowell*, 903 F.2d 899, 903 (2d Cir. 1990). The Eighth Circuit Court of Appeals has similarly observed that: "'In investigations of ongoing narcotic operations, "intervals of weeks or months between the last described act and the application for a warrant [does] not necessarily make the information stale."'" *United States v. Smith*, 266 F.3d 902, 905 (8th Cir. 2001) (quoting *Formaro*, 152 F.3d at 771); *United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993) ("'With respect to drug trafficking, probable cause may continue for several weeks, if not months, of the last reported instance of suspect activity.'") (quoting *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986)).

In this case, the search warrant application reflects an investigation of activities consistent with drug trafficking. Inv. Trimmer's review of pseudoephedrine logs of local pharmacies had unearthed a series of purchases of products containing pseudoephedrine, a key ingredient in the manufacture of pseudoephedrine, by defendant Johnson, all of which transpired no later than three weeks before the date the search warrant was issued. All told, defendant Johnson purchased 10,320 milligrams of pseudoephedrine in a period of less than ten days. Defendant Johnson's purchases of products containing pseudoephedrine were not only suspicious because of the quantity purchased, but also because he made purchases from

different stores on the same date. On June 26, 2007, the pseudoephedrine logs at Spirit Lake Lewis Drug, Spirit Lake Wal-Mart and Milford Pharmacy reflected that defendant Johnson had purchased products containing pseudoephedrine from each totaling 5520 milligrams of pseudoephedrine. The search warrant application was further supported by Inv. Timmer's observation, in plain view in a burn barrel at defendant Johnson's Clay County property, of "a number or ripped lithium batteries, consistent with having been used in the methamphetamine manufacturing process, along with what appears to be empty pseudoephedrine blister packs." These observations occurred on the same day the search warrant was issued. Finally, defendant Johnson's tenants for his Clay County property told Inv. Timmer that defendant Johnson frequented a building on the property "at least weekly."

In this case, given that methamphetamine manufacturing activity was suspected, the two and one-half weeks lapse since defendant Johnson's last known purchase of pseudoephedrine did not negate the existence of probable cause given that on the date the search warrant was sought law enforcement officers had observed in plain view, at the location of the proposed search, the remnants of materials used in the manufacture of methamphetamine. Moreover, law enforcement officers ascertained that defendant Johnson frequented a building on the property "at least weekly." Therefore, considering the totality of the information provided to the state magistrate, the court concludes the search warrant for defendant Johnson's Clay County property was not based on stale information. *See Smith*, 266 F.3d at 905; *Formaro*, 152 F.3d at 771; *see also United States v. Hartje*, 251 F.3d 771, 775 (8th Cir. 2001)(concluding that a drug transaction one month prior to the search warrant application did not constitute stale information in light of the ongoing nature of the crime). Therefore, this objection is also overruled.

### 3.    *Leon good faith*

Finally, defendant Johnson objects to Judge Zoss's alternative conclusion that even if the search warrant for defendant Johnson's Clay County property was not supported by probable cause, the search is lawful under the good faith exception of *United States v. Leon*, 468 U.S. 897 (1984).   In *Leon*, the United States Supreme Court held that evidence obtained pursuant to a subsequently invalidated search warrant need not be excluded from the prosecution's case in chief if the executing officers acted in objectively reasonable reliance on the issuing court's determination of probable cause and technical sufficiency. *Id.* at 922-23.   "[A]bsent allegations that the [issuing judge] was not neutral, 'suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" *United States v. Fulgham*, 143 F.3d 399, 401 (8th Cir. 1998) (quoting *Leon*, 468 U.S. at 926).   Here,  no evidence exists in the record to suggest that the state magistrate did not remain neutral and detached when making her probable cause determination. Moreover, no evidence has been offered which would suggest that the state magistrate "wholly abandoned [her] judicial role." *See Leon*, 468 U.S. at 923 (stating that suppression remains an appropriate remedy when the issuing judge wholly abandons his judicial role). Therefore, the court also overrules defendant Johnson's objection as to Judge Zoss's *Leon* analysis.

## III.  CONCLUSION

Therefore, for the reasons set forth above, the court, upon a *de novo* review of the record, accepts Judge Zoss's Report and Recommendation and **grants** defendant Johnson's motion to suppress the evidence seized in the search of the Primghar residence (Dkt. #71)

but **denies** defendant Johnson's motion to suppress the evidence seized in the search of the Clay County property (Dkt. #70).

     **IT IS SO ORDERED.**

     **DATED** this 14th day of May, 2008.

_Mark W. Bennett_
_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA